HAROLD PATZ TRUST, CLIFFORD PATZ AND HOWARD PATZ, TRUSTEES, AND DARRELL PATZ TRUST, CLIFFORD PATZ AND HOWARD PATZ, TRUSTEES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5954–76. Filed December 20, 1977.

*Robert E. Nelson*, for the petitioners.

*Joseph R. Peters* and *Joseph T. Chalhoub*, for the respondent.

WILBUR, *Judge:* This case is before us on respondent's motion to dismiss for lack of jurisdiction upon the ground that the petition was not filed by the proper parties as required by Rule 60(c).[1] In addition, petitioners question the validity of the deficiency notices issued herein.

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, 60 T.C. 1069 (1973). All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.

## FINDINGS OF FACT

Petitioners are two intervivos trusts, the Harold Patz Trust (hereinafter Harold Trust) and the Darrell Patz Trust (hereinafter Darrell Trust), established by instruments dated January 1, 1955. The trustees during 1972 were Clifford Patz (hereinafter Clifford) and Howard Patz (hereinafter Howard). Both the trustees and trust beneficiaries reside in Pound, Wis.

The trustees of the Harold Trust filed Federal income tax returns for the trust for the years 1972 through 1974. By its terms the Harold Trust terminated on March 17, 1974, and all its assets were distributed on December 31, 1974.

The trustees of the Darrell Trust filed Federal income tax returns for the trust for the years 1972 through 1975. By its terms the trust terminated on March 4, 1976.

The trustees of neither trust sent respondent a notice of their fiduciary relationship qualifying under section 6903 or a notice that their fiduciary relationship had been terminated prior to the filing of the petition herein.

On March 30, 1976, respondent determined a $29,347.99 deficiency in Federal income taxes against the Darrell Trust for 1972. The deficiency notice was addressed to "Darrell Patz Trust/Mr. Howard Patz, Trustee." That same day respondent determined a $29,322.04 deficiency in Federal income taxes against the Harold Trust for 1972. The deficiency notice was addressed to "Harold Patz Trust/Mr. Clifford Patz, Trustee."

On June 28, 1976, a petition contesting these deficiencies was filed in this Court. The petition was signed by Clifford and Howard as cotrustees of the Harold Trust and Darrell Trust. Respondent filed a motion to dismiss for lack of jurisdiction. A hearing was held on the motion in Milwaukee, Wis., after which the parties submitted briefs supporting their positions.

## OPINION

We are presented here with two issues for our determination:

(1) Are the notices of deficiency which were sent to petitioners valid? (2) If the deficiency notices were valid, do the trustees have capacity to litigate in this Court?

With respect to the first issue, the validity of the deficiency notices, section 6212(a) authorizes the mailing of a notice of deficiency "to the taxpayer by certified mail or registered mail." Section 6212(b)(1) provides that such a notice "if mailed to the taxpayer at his last known address, shall be sufficient," in the absence of a notice of fiduciary relationship given under section 6903. The deficiency notices herein were mailed to the last trustees of the Harold and Darrell Trusts. These persons obviously received the notices in time to file a timely petition with this Court. There is no indication whatsoever in the record that the notices were not sent to the "last known address" of the trusts.[2]

The fact that the trusts terminated prior to the mailing of the deficiency notices does not change this result. Section 6212(b)(1) authorizes notices to be sent in compliance with its terms regardless of whether the taxpayer is "deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence." We have frequently upheld deficiency notices sent to taxpayers who were no longer in existence or under some legal disability when the notices were mailed.[3]

Petitioners also argue that the deficiency notices were invalid because the trusts were accumulation trusts, the incomes of which were deemed distributed under sections 665 through 669 when the trusts terminated prior to the sending of the deficiency notices. We need not, and do not decide whether petitioners correctly interpret the effect of sections 665 through 669 on their trusts. Whether the assets of the trusts are deemed distributed or distributed in fact is irrelevant in determining the validity of the deficiency notices. Furthermore, the mere absence of funds from which its tax liability may be satisfied does not render a proceeding to determine an entity's liability moot. Cf. *Stanton v. Commissioner*, 98 F.2d 739 (7th Cir. 1938), cert. denied 305 U.S. 650 (1938), affg. 34 B.T.A. 451 (1936). In short, we believe the

---

[2]Petitioners have failed to prove (as discussed *infra* ) that they gave a notice of their fiduciary relationship satisfying the requirements of sec. 6903 and sec. 301.6903–1(b), Proced. & Admin. Regs.

[3]E.g., *Estate of Sivyer v. Commissioner*, 64 T.C. 581 (1975) (discharged executor who had not given respondent notice of his termination of fiduciary capacity); *Fehrs v. Commissioner*, 65 T.C. 346, 351 (1975) (deficiency notice sent to decedent); *Great Falls Bonding Agency, Inc. v. Commissioner*, 63 T.C. 304 (1974) (dissolved corporation).

validity of the notices must be determined under section 6212 and not under sections 665 through 669.

The principal issue for decision is whether petitioners possess capacity to litigate in this Court. This issue must be resolved by reference to Rule 60(c)[4] which provides that:

The capacity of a fiduciary or other representative to litigate in the Court shall be determined in accordance with the law of the jurisdiction from which he derives his authority.

Respondent contends that under the law of Wisconsin, from which the trustees derive their authority, the trustees do not possess capacity to litigate. Petitioners, while admitting the applicability of Wisconsin law, contest this conclusion as to capacity.

Turning first to the Harold Trust, we hold that its trustees do not possess capacity to litigate because there exists no trust for them to represent. The Harold Trust terminated by its terms on March 17, 1974, and all of its assets were distributed on December 31, 1974. The Restatement of Trusts (Second), sec. 344 (1957), provides:[5]

When the time for the termination of the trust has arrived, the trustee has such powers and duties as are appropriate for the winding up of the trust.

Comment a. to section 344 states:

Although the time for the termination of the trust has arrived in accordance with the terms of the trust, the trustee does not thereby necessarily cease to be trustee, but he continues to be trustee until the trust is finally wound up. The period for winding up the trust is the period after the time for termination of

---

[4]As the comment to this Rule notes, Rule 60(c) was derived from rule 17(b) of the Federal Rules of Civil Procedures, which states:

"(b) *Capacity to Sue or be Sued.* The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C. secs. 754 and 959(a)."

This rule, like our Rule 60(c), generally determines the capacity to litigate of fiduciaries such as trustees by reference to State law.

[5]Accord, *Swoboda v. United States,* 258 F.2d 848 (3d Cir. 1958); *Estate of Fiske v. Commissioner,* 45 B.T.A. 135 (1941), affd. sub nom. *Commissioner v. Davis,* 132 F.2d 644 (1st Cir. 1943); G. Bogert, Trusts and Trustees, sec. 1010 (2d ed. 1948); 4 A. Scott, Trusts, sec. 344 (3d ed. 1967); H. Durand, "Powers of Trustees Upon Termination of Trusts," 45 Colum. L. Rev. 865 (1945).

the trust has arrived and *before the trust is terminated by the distribution of the trust property.* [Emphasis added.]

We have been cited to no authority suggesting that Wisconsin law diverges from the general rule of the Restatement, and the case appears to be quite the contrary. It is universally accepted that a fundamental prerequisite to the existence of a trust is a trust corpus consisting of real or personal property. Restatement, Trusts 2d, sec. 74 (1957). The Wisconsin Supreme Court has recognized this principle in stating that "some interest in property is necessary" to the existence of a trust. *In re Martin's Trust Estate*, 21 Wis.2d 334, 124 N.W.2d 297, 301 (1963). Accord, *Christensen v. Commissioner*, 40 T.C. 563 (1963) (discussing Wisconsin law). The principle is also implicit in Wisconsin's statutory definition of a "trustee" as "a person holding in trust title to or holding in trust a power over property." Wis. Stat. Ann., sec. 701.01(5) (West 1976). While the petition herein was filed in 1976, the Harold Trust distributed all its property in 1974. From that point on it no longer existed as a trust because it lacked property, an element essential to the existence of any trust. Its former trustees cannot litigate herein since "the Tax Court has no jurisdiction to entertain a proceeding purporting to be brought by a nonexistent party." *National Committee to Secure Justice in the Rosenberg Case v. Commissioner*, 27 T.C. 837, 839 (1957).

In two previous cases, which are factually indistinguishable from the present case, this Court has recognized the principle that trusts which distribute their assets thereafter cease to exist and no longer possess capacity to engage in litigation. In *Fancy Hill Coal Works v. Commissioner*, 2 B.T.A. 142 (1925), the petition on behalf of a dissolved common law trust (which had operated a business in such a manner as to be taxable as a corporation) was filed by its last operating trustee. The petition was dismissed on the ground that the last trustee of the dissolved trust lacked the authority to commence the action. More recently, in *Main-Hammond Land Trust v. Commissioner*, 17 T.C. 942 (1951), affd. 200 F.2d 308 (6th Cir. 1952), we held that a trust which had terminated its existence and distributed its assets prior to the issuance of a notice of deficiency could not litigate that deficiency in this Court. As we noted therein:

Under the laws of most states a corporation remains in existence for a period following its dissolution for the purpose of settling its affairs and

retiring any outstanding indebtedness. However, there has been no authority cited, and we know of none, for the proposition that the same is true of a trust following distribution of its assets, * * * . Accordingly, we are of the opinion that Orpheum [the trust] was completely terminated and, in all respects, legally died on June 1, 1950, [when it distributed its assets] leaving no legally recognizable successor. [17 T.C. at 957.]

The Darrell Trust presents a slightly different factual pattern, having terminated by its terms shortly before the deficiency notice was issued. Nevertheless, the applicable legal principles are the same, as discussed earlier, and we find that petitioners have failed to carry their burden of proving that the trustees of the Darrell Trust have capacity to litigate. The previously stated rule presupposes the continuing existence of the trust due to the trustees' failure to distribute its assets. But it does not explicitly appear in the petition, motions, or elsewhere in the record that the assets of the Darrell Trust were not in fact distributed when the trust terminated prior to the filing of the petition herein. Further, in some instances, depending largely upon the type of property involved and the terms of the trust, "legal title of the property vests in the persons beneficially entitled at termination of the trust without the necessity of a conveyance to them by the trustee." 4 A. Scott, Trusts, sec. 345, p. 2738 (3d ed. 1967). Since the trust document has not been placed in the record and we do not know the character of the trust's assets,[6] we cannot determine whether or not this principle applies so as to divest the trustees of all trust property and authority.

We also note that no authority has been offered for the proposition that the commencement of litigation (other than for the construction of the trust instrument or the trustees' accounting) after the termination date is a power appropriate to the winding up of the trust. To the contrary, it was held in *Harshbarger v. Harrison*, 124 W. Va. 688, 22 S.E.2d 303 (1942), that the former trustees could not commence litigation after the trust's termination date. We have been shown nothing to indicate that Wisconsin would not follow the reasoning of that case.

Petitioners state that one duty of the trustees was to

---

[6]The petition states the two trusts at one time operated a manufacturing partnership. But this may have been dissolved during 1974 when the Harold Trust dissolved and distributed its assets. There is no indication what type of property the Darrell Trust possessed thereafter.

determine whether additional Federal income tax was owed and until then the "fiduciary responsibilities are not complete" and the trusts not terminated. However, this contention was rejected in *Main-Hammond Land Trust v. Commissioner*, 17 T.C. 942, 957 (1951), affd. 200 F.2d 308 (6th Cir. 1952), where we held that a trust had terminated despite the deposit of money to indemnify the trustee for potential Federal tax liability prior to distribution of the trust's property.

Petitioners have the burden of proving that this Court has jurisdiction. *Fehrs v. Commissioner*, 65 T.C. 346, 348 (1975); *Main-Hammond Land Trust v. Commissioner*, supra at 957; *National Committee to Secure Justice in the Rosenberg Case v. Commissioner*, 27 T.C. 837 (1957). This they have failed to establish. We have not been informed whether either trust possesses assets and if so what kind, the trust instruments have not been presented, and we have found no authority in Wisconsin or elsewhere which would permit trustees to litigate on the facts presented to us. In the absence of any evidence to support our jurisdiction, we must rule that the Harold Trust and Darrell Trust, which terminated before the notices of deficiency were sent, were not in existence when the petition was filed herein. Hence, Clifford and Howard do not have the capacity under Rule 60(c) to litigate in this Court.

Petitioners nevertheless contend (citing *Krueger v. Commissioner*, 48 T.C. 824 (1967), and cases cited therein) that since the trustees in practical effect gave notice of their fiduciary relationship but no notice of its termination, section 6903 confers capacity upon them to litigate herein. Petitioners assert that this is so even though the trustees lack capacity under State law; even though their assertion is plainly at war with the unequivocally clear language of Rule 60(c); and even though the above-cited cases *(Main-Hammond Land Trust v. Commissioner, supra; Fancy Hill Coal Works v. Commissioner*, 2 B.T.A. 142 (1925)) hold to the contrary.[7]

The short answer is that since petitioners have not placed in the record either the trust documents or the Federal income tax returns, or any other information given to respondent, they have

---

[7]Indeed, if a trustee had been removed for breach of trust, but notice of termination pursuant to sec. 6903 had not been sent to respondent, petitioners' position would suggest that the removed trustee (or any other trustee disqualified under State law) would nevertheless have capacity to litigate in this Court.

not borne their burden of proving that notice was given satisfying the requirements of section 6903, and section 301.6903–1(b), Proced. & Admin. Regs. Cf. *Estate of Clarke v. Commissioner*, 54 T.C. 1149, 1169 (1970). Consequently, we do not believe this to be the appropriate occasion to attempt to reconcile any potential conflict between section 6903 and Rule 60(c) resulting from petitioners' reading of *Krueger*. *Krueger* was a case where notice was clearly given and no notice of termination ever sent. The case was decided on those specific facts, and, additionally, involved a decedent's estate rather than a trust.

Sections 6212 and 6903 are interrelated parts of a statutory framework designed by Congress to ensure that where taxpayers such as minors, incompetents, decedents, and bankrupts no longer act on their own behalf, respondent can deal with the taxpayer or his fiduciary according to the most recent notice received. Without such statutes respondent could not be assured of the authority of the person with whom he was dealing. As Congress noted in enacting the predecessor to section 6903:

It, therefore, becomes necessary to make certain that there shall be some individual to whom the notice may be mailed and upon whom the demand may be made, in the case of, for example, an incompetent, a decedent's estate, or an estate in the hands of a receiver or trustee in bankruptcy. [S. Rept. 52, 69th Cong., 1st Sess. (1926), 1939–1 C.B. (Part 2) 332, 335; H. Rept. 356, 69th Cong., 1st Sess. (1926), 1939–1 C.B. (Part 2) 361, 372.]

Thus the central purpose of those sections is to inform the respondent with whom to deal, and to whom to send the deficiency notice.

This case, involving dissolved trusts, is much closer to *Great Falls Bonding Agency, Inc. v. Commissioner*, 63 T.C. 304 (1974), which involved a dissolved corporation, than it is to *Krueger v. Commissioner, supra*, which involved a decedent's estate. Trusts, like corporations, are separate taxable entities that can only act through the entity's respresentatives. The present case does not involve a fiduciary handling the affairs of another taxpayer (e.g., a deceased, incompetent, or bankrupt) who has previously accounted for his or her own liability and whose changed circumstances have not been brought to respondent's attention. This case involves, as did *Great Falls Bonding Agency, Inc.*, a deficiency notice sent to an entity-taxpayer which was no longer

in existence under the laws of the jurisdiction under which its existence had previously been recognized.

While this dismissal of jurisdiction may at first appear as a harsh application of Rule 60(c), a closer analysis demonstrates its essential justice. Where an entity has no assets, its tax must normally be collected from its transferees. If we first permit the entity, which has no financial stake in the outcome due to its lack of assets, to contest the liability, we are later placed in the dilemma of either collaterally estopping the transferee, who has a financial stake, from contesting the previously litigated issues (as in *Krueger v. Commissioner*, 48 T.C. 824 (1967)), or else requiring respondent to engage in fruitless multiple litigation over a single tax liability. The merits of the deficiencies determined against the petitioners can be litigated more appropriately in actions by the transferees or others who are personally liable and have a financial stake in the outcome. See *Dillman Brothers Asphalt Co. v. Commissioner*, 64 T.C. 793, 797 (1975); *Great Falls Bonding Agency, Inc. v. Commissioner, supra* at 307.

*An appropriate order will be issued.*